IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| The Christian Methodist Episcopal Church, the Atlantic Beach CME Mission Church and its congregation, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) Civil Action No. 4:08-cv-00263-TLW-TER |
| Chief Randy Rizzo, individually and in his official capacity as chief of police; and the Town of Atlantic Beach, | ) ) ) ) ) |
| Defendants. | ) ) ) |

# ORDER

The plaintiffs filed this action on January 25, 2008, raising first amendment and religious discrimination claims. (Doc. #1). The defendants filed a motion for summary judgment on July 10, 2009. (Doc. #42). The plaintiffs filed a response in opposition to the motion for summary judgment on August 16, 2009. (Doc. #49). The plaintiffs then filed an affidavit in support of the response in opposition on August 17, 2009. (Doc. #50). This Court conducted a hearing in this matter on January 22, 2010. Following the hearing, the plaintiffs filed an additional series of affidavits in opposition to the motion for summary judgment. (Doc. #71). The Court has carefully considered the motions, memoranda, and arguments of the parties, and this matter is now ready for disposition.

## FACTS

The plaintiffs to this action include the Christian Methodist Episcopal Church, an eleemosynary corporation organized under the laws of Tennessee, as well as the Atlantic Beach CME Mission Church and its congregation, a mission of the Christian Methodist Episcopal Church

located in Atlantic Beach, South Carolina ("plaintiffs"). The defendants in this action include the town of Atlantic Beach, South Carolina and the chief of police for Atlantic Beach.[1] In the complaint, the plaintiffs assert that the defendants have interfered with the free exercise of the plaintiffs' religion by threatening the plaintiffs, interfering with the plaintiffs' operation of its church, and by pressuring the plaintiffs to remove its church and services to an area inaccessible to the plaintiffs' congregation. (Doc. #1). In support of these allegations, the plaintiffs assert that officers of the Atlantic Beach police department entered the CME mission on May 16, 2006 and issued a ticket for violation of the municipal noise ordinance, thereby interrupting the religious services. (Doc. #1, ¶ 10). The plaintiffs also note that the defendant municipality sent a letter to the town threatening to "persecute" the church for "loud sermons" which the municipality claimed were in violation of the noise ordinance. (Doc. #1, ¶ 12). The complaint further alleges that "for discussion and intimidation of Plaintiffs," the town placed onto the town's meeting agenda a notice of a meeting regarding the "[o]ccurrence of chronic noise ordinance violations on Sunday morning by the church located at 509 30th Avenue South" on January 7, 2008. (Doc. #1, ¶ 14).

The plaintiffs' primary contentions relate to the Atlantic Beach police department's enforcement of a municipal noise ordinance. The record indicates that the CME Mission has utilized a speaker system to broadcast the church's worship services into the neighborhood surrounding the church, and that area business owners and residents have taken exception to the noise levels on numerous occasions. As noted, a member of the CME Mission was ticketed for violation of the noise ordinance in 2006, though the ticket was later dismissed.

---

[1]The record indicates that the entire town of Atlantic Beach, South Carolina encompasses an area of approximately four square blocks.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the defendant is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As the party seeking summary judgment, the defendant bears the initial responsibility of informing this Court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires that the defendant identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the defendant bears this initial responsibility, the plaintiff, as nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 317. In satisfying this burden, the plaintiff must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the plaintiff must produce evidence on which a jury could reasonably find in its favor. See Anderson, 477 U.S. at 252.

In considering the defendants' motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the plaintiff as nonmoving party. See Miltier v. Beorn, 869 F.2d 848 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as

a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

## FREE EXERCISE

The plaintiffs have filed this action pursuant to 42 U.S.C. § 1983. Section 1983 provides that:

> every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To establish a violation under 42 U.S.C. § 1983, the plaintiffs must prove: (1) that the defendants deprived them of a right secured by the Constitution and laws of the United States, and (2) that the defendants deprived the plaintiffs of this right under color of state statute, ordinance, regulation, custom or usage. Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001), Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Determining the applicability of the statute in this action requires the Court to first examine the underlying constitutional violations alleged in the complaint.

It is axiomatic and abundantly clear that the "Free Exercise Clause of the First Amendment, applicable to the states through the Fourteenth Amendment, forbids the adoption of laws designed to suppress religious beliefs or practices unless justified by a compelling governmental interest and narrowly tailored to meet that interest." Booth v. Maryland, 327 F.3d 377, 380 (4th Cir. 2003). Indeed, the United States Supreme Court has noted that the "principle that government may not enact laws that suppress religious belief or practice is so well understood that few violations are recorded

4

in our opinions." Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah, 508 U.S. 520, 523 (1993).

The plaintiffs' free exercise claims stem largely, if not entirely, from the defendants' enforcement of a municipal noise ordinance against the church. The ordinance at issue provides that:

> [t]he creation and continuation of any loud, disturbing and unnecessary noise is hereby prohibited where it can be heard more than fifty feet away. It shall be unlawful for any person to cause, make or contribute to creating any loud or disturbing noise of such character, intensity, or duration as to be detrimental to the life or health of any citizen.

Atlantic Beach, SC, Ordinance Sec. 9-2-14(a).

It is undisputed that the plaintiffs have utilized speakers to broadcast their church services into the neighborhood surrounding the CME Mission on numerous occasions. This broadcast was accomplished through the use of an amplifier and speaker system. The record reflects that the church would sometimes place the speakers inside the church, and, at other times, would place the speakers outside the church. This practice was followed during regularly scheduled Sunday morning services, as well as during fall and spring revivals which would be held nightly for a period between three to thirty days. One church member, the husband of the Atlantic Beach CME Mission's pastor, testified that the broadcast could often be heard up to 100 feet away from the church. (D. Price Dep. 57:22-58:18). The record contains numerous complaints made by area residents and business owners to the Atlantic Beach police about the noise levels emanating from the CME Mission. In addition, although the municipal ordinance makes no reference to decibel levels, one incident report reflects that officers responding to a noise complaint at the church "could hear loud screaming coming from the speakers sat outside the church," and that the officers "went to the source of the noise and took a sound meter level of 88 to 95 dB from the road which was more than 100 ft from the source."

(Doc. #42, exhibit 4 at p. 9). The record also reflects that the husband of the CME Mission's pastor was ticketed by the Atlantic Beach police department on May 16, 2009. The ticket was later dismissed.

The right to practice religion is a fundamental right. However, numerous courts have noted that the "Free Exercise Clause . . . 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" Booth v. Maryland, 327 F.3d 377, 380 (4th Cir. 2003) (citing Employment Div., Dep't of Human Res. v. Smith, 494 U.S. 872, 879 (1990) (superseded by statute)). It has been held that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." Id. (citing Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah, 508 U.S. 520, 531 (1993)). As an initial matter, the plaintiffs have not asserted that the broadcasting of the weekly and revival services is a tenet of the Christian Methodist Episcopal faith. Rather, the plaintiffs primarily object to the manner in which the municipal noise ordinance was enforced against the Atlantic Beach CME Mission and its members. The record indicates that the plaintiffs are particularly concerned with the manner in which members of the Atlantic Beach police department entered the church during an ongoing service to address the alleged noise ordinance violations, and suggest that the officers should have used a more appropriate method to respond to the noise complaints.[2]

---

[2] See Deposition of Rev. Wendy Price, 29:6-15:
Q  How do you believe that the town should
   respond to such complaints when there's an ordinance
   that says this noise won't exist?
A  What I felt the town should have done is do a
   measurement. If it did apply to the church, which I

However, the plaintiffs have submitted no caselaw suggesting, nor does the evidence in the record indicate, that the Atlantic Beach police department acted outside the scope of its authority in enforcing the municipal noise ordinance. All testimony introduced into the record indicates that the plaintiffs were aware of the municipal noise ordinance, but were of the belief that the CME Mission, as a religious institution, was exempt from the ordinance.[3] However, the plaintiffs have not proffered evidence or caselaw to support the assertion that the ordinance does not apply to the CME Mission. There is simply no basis to conclude that the CME Mission was exempt from the ordinance.

---

don't believe, they should have done a measurement. And we asked for that, and they never done it.
    And I think they should have been considerate not to come barging in on our services, but to correspond with us through a letter or either, you know, reach us while we're on the outside so it does not disrupt our services. We want to cooperate with them, but they didn't do what they were supposed to do.

[3] See Deposition of Rev. Wendy Price, 28:13-22:
Q Is the CME Church subject to the same laws as any other organization or group in the town?
A I don't believe all the laws of the town relates to the CME Church.
Q Okay. What laws do you think do not relate to the CME Church?
A I don't believe the noise ordinance relates to the CME Church.
    See also Deposition of Darnell Price, 30:17-22, 47:2-12
Q It's your testimony, then, that it does not apply to the church, that the ordinance does not apply?
A The noise ordinance.
Q The noise ordinance does not apply. That's your your testimony?
A Yes.
. . . . . .
Q Is your answer that you're not violating the ordinance because you are not too loud or is your answer your're not violating the ordinance because it does not apply?
A The section 9-11 does not apply to us.
Q Does the ordinance apply to the church is my question of you.
A. No, it does not.

The evidence of record is relevant to a decision in this case. It indicates that residents and business owners in the area surrounding the CME Mission were very concerned about the noise emanating from the CME Mission. In fact, one police incident report detailing an occasion on which police responded to noise complaints at the church notes that the police received calls from a resident threatening "to sue the town for inaction." (Doc. #42, exhibit 4 at p. 9). While the plaintiffs assert that the police department acted outside the scope of its authority to address the noise complaints by entering, as noted, the plaintiffs have not provided any legal authority to support this position. The evidence of record shows officers entered the CME Mission to address the noise issues based on an ordinance in place. The record does not reflect that officers entered the CME Mission with the intentions of suppressing or engaged in conduct which suppressed religious beliefs or practices. Thus, the Court concludes that the defendants are entitled to summary judgment on the plaintiffs' Free Exercise claims filed pursuant to the provisions of 42 U.S.C. § 1983.[4]

## **RELIGIOUS DISCRIMINATION**

The plaintiffs have also filed a claim for "Religious Discrimination" arising under 42 U.S.C. § 1983. More specifically, the plaintiffs allege that the defendants applied "their ordinances in a discriminatory manner against the Plaintiffs and the exercise of their religion, while not applying those same ordinances, in the same manner to other churches and religious exercises and nonreligious entities and events." (Doc. # 1, ¶ 19). In the response to the motion for summary judgment, the plaintiffs add that "[t]he allegations of the complaint are that the ordinance was

---

[4]Within the factual allegations section of the complaint, the plaintiffs assert that the ordinance in question is "vague, overly broad and is not reasonably related to the public welfare." (Doc. #1, ¶ 12). However, the plaintiffs have not provided any caselaw or briefing in support of this assertion, nor illustrated the manner in which this assertion relates to the three causes of action cited in the complaint. The Court notes that the record does not support a finding that the ordinance in question is either constitutionally vague or constitutionally overbroad.

8

enforced against the Plaintiff, when the Plaintiff was not in violation of the ordinance, while it was not enforced against others who were in violation of the ordinance." (Doc. #49 at p. 3). Thus, in asserting that the noise ordinance was selectively enforced, the plaintiffs have raised a claim under the Equal Protection Clause of the Fourteenth Amendment.

As the Fourth Circuit has noted, the Equal Protection Clause's "deceptively simple language that a state may not 'deny to any person within its jurisdiction the equal protection of the laws,' . . . lies at the core of our rule of law." Sylvia Development Corp. v. Calvert County Maryland, 48 F.3d 810 818 (1995) (quoting U.S. Const. Amend. XIV, § 1). The Fourth Circuit has added that the clause "requires that the states apply each law, within its scope, equally to persons similarly situated, and that any differences of application must be justified by the law's purpose." Id. However, "[t]o prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." Id. at 819 (quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944)). Rather, "[a] violation is established only if the plaintiff can prove that the state *intended* to discriminate." Id. (emphasis in original).

As an initial matter, the plaintiffs have not submitted sufficient evidence to support their allegation that the noise ordinance was enforced in a discriminatory manner. The record does not illustrate that other area businesses and residents were allowed to operate in violation of the noise ordinance. Within the complaint, the plaintiffs have asserted that the "noise ordinance was lifted" during the "Bike Week Festival," held annually for a period surrounding Memorial Day in Atlantic Beach, and that "[v]endors around the Plaintiffs were allowed to operate their speakers at full volume, while the Plaintiffs were ordered to lower their speakers, which were moved outside for their revival." (Doc. #1, ¶ 11). However, no evidence in the record before the Court supports this

9

allegation. Testimony in the record before the Court includes one church member's recount of a discussion he had with the city manager and the Atlantic Beach chief of police about the noise levels emanating from an adult establishment located within the town three days prior to Memorial Day weekend in 2008. However, this general, non-specific evidence is not sufficient to show that the adult establishment was allowed to operate in violation of the noise ordinance.[5]

In addition, the plaintiffs have not been able to introduce sufficient evidence of an intent to discriminate by the defendants through the asserted selective enforcement of the noise ordinance. As the Fourth Circuit has recognized:

> [s]everal factors have been recognized as probative of whether a decisionmaking body was motivated by a discriminatory intent, including: (1) evidence of a 'consistent pattern' of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings.

Sylvia Development Corp. v. Calvert County Maryland, 48 F.3d 810 (4th Cir. 1995) (citing

---

[5]See Deposition of Darnell Price, 65:5-66:24:
. . . And as I passed Crazy
Horse, which is in front of the Town Hall, I heard this
big blast. And I mean it was loud. That's loud.
. . . .
So when Chief Rizzo seen me come in, he walked
up and says, "I already told them three times to turn it
down."
I said, "Don't be saying it because I'm
sitting here," because we just got through arguing about
the church ordeal.
And so he said, "I'm going to go and tell them
to turn the speakers around."
. . . .
So did they file a complaint? I don't know.
Did he write up that he went over there four times to
tell them to turn it down? Did he write that up? I
don't know. But Charles Williams [city manager] knew that day.

Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 266-68 (1977). The evidence of record before this Court is insufficient to support a finding of discrimination as to the factors delineated above. Thus, the defendants are entitled to summary judgment on the plaintiffs' claims of religious discrimination pursuant to 42. U.S.C. § 1983.

## INJUNCTIVE RELIEF

Finally, the Court notes that the plaintiffs' third cause of action for temporary and permanent injunctive relief is denied. As the claim for injunctive relief is premised on the alleged constitutional violations discussed herein, the Court concludes that injunctive relief is not appropriate in this matter.

## CONCLUSION

For the reasons set forth herein, the defendants' motion for summary judgment is, hereby, **GRANTED**, and this action is **DISMISSED**. (Doc. #42).

**IT IS SO ORDERED**.

    s/ Terry L. Wooten
United States District Judge

February 18, 2010
Florence, South Carolina